May it please the Court, Michael Kodner on behalf of Petitioner Jose Gallegos-Vasquez. I would respectfully reserve one minute for rebuttal. Okay, watch your clock. It runs down. Excuse me, I'm sorry? The clock runs down, so if you get to one minute, you're stopped. Understood, Your Honor. Thank you very much. As the Court is well aware, former INA 212C provided a discretionary waiver of crimes for lawful residents having at least eventually seven years of lawful residency. These waiver applications were undoubtedly considered what is called continuing applications, meaning there was no cutoffs for convictions, and the alien continued to accrue a continuous residency until a final administrative order, typically the board opinion, which would have been the case here as there was an appeal. Equally as important in that seven-year threshold is that this Court has held in Ortega de Robles that the seven-year calculation has been held to include time spent as a temporary resident. Now, while the amendments to the INA by IRA and ADEPA eliminated 212C relief, the United States Supreme Court clearly held in St. Cyr that such amendments could not be retroactively applied to aliens with convictions predating the repeal of 212C. The basic rationale was that aliens in a position to obtain such relief prior to the repeal considered to have what was called a settled expectation that was prejudicially stripped by the amendments. In the present case, both the immigration judge and the board issued opinions denying the 212C motion to reopen, basically on the same grounds. Both opinions denied based on the purported lack of evidence of guilty pleas and the inability to establish a settled expectation to relief due to petitioners' purported status being improperly adjusted from temporary resident to lawful permanent resident. And the reason that I point that out is that this Court has clearly held that when the board incorporates opinions of the immigration judge as their own and essentially agrees with them, it makes both decisions appropriate for review. And I would submit to the Court that that makes both decisions the subject for review in that they're essentially the same decision. Is that a sideways way of justifying the brief? Yes, Your Honor. I believe it is. Yes, it is. It is, Your Honor. Pretty lame, but okay. I understand, Your Honor. With respect to both opinions holding that the record did not establish that petitioners' three misdemeanor convictions were the result of guilty pleas, I think it's important to start with the Supreme Court's notation in St. Cyr that as of 2001, 90 percent of criminal convictions were obtained through plea agreements. In connection, it must be noted this is not a Real ID Act case whereby the evidentiary and standards of burden of proof for relief applications were heightened under the Real ID Act. When did he first state that he was convicted by virtue of a plea? I believe that this was addressed in two situations. The first one was the concession in the original plea proceedings before the immigration judge. Which was what year? Was that before St. Cyr? It would have been 1998, which was the first time that the actual convictions were addressed. And he testified that he had pled guilty at that time? He testified. He conceded. In immigration law, you're asked, do you concede and admit the charges? And he conceded and admitted. Now, when he went before the immigration judge and reopened proceedings, he was asked, or at least he offered as a proffer, that he understood what trial was and that evidence was taken during trial. And he clearly testified that none were the case in this situation and that he entered his plea through a, excuse me, the conviction was obtained through a plea of guilty. And this was accepted by the immigration judge at the time. Right. But what I'm getting at is he wouldn't have any motivation to fabricate in 1999 that he had pled guilty to those convictions. Absolutely not, Your Honor. And I think that that brings up an important point. I think it's inequitable to allow him to, first of all, we're operating under the premise here that there was no documentation whatsoever brought by the government in respect to the three misdemeanor convictions. So the immigration judge allowed a concession under oath as to the existence of these convictions. That was fine. But what was not fine, apparently, was when he was testifying credibly, and I think it's important from the Kaloubi decision that if they're in the absence of a negative credibility finding, that a petitioner's testimony has to be considered as true. And I think that that's important of being connected to a pre-real ID act case. And the fact that he testified, again, credibly, that he was convicted through a plea of guilty. You know, I'm looking at a board decision of October 1, 1998, AR 221 and 222. The board says that he was convicted on March 15, 89, of an offense that took place March 2 of that same year. And he was convicted on July 31, 89, of an offense that had taken place four days earlier on the 27th. If those dates are accurate, and I have no reason to know whether they're accurate or inaccurate, but if they're accurate, there's no way he was tried.  I think, and that's what I think that they were, I think, to be honest with you, the immigration judgment board, I think they were looking for reasons of denial in this situation. As Judge Wardlaw so eloquently put, he would have no reason to perjure himself under oath in this respect. And I do reiterate my previous argument. I just think it's inequitable to allow him to testify to the existence of these convictions. You know, your time is running out, so I hesitate to interrupt you, but the soft spot for me in this case is the settled expectation point. At the time that he pleads, he's not yet an LPR, correct? Understood, Your Honor. He's not. Well, at the time that, see, and I think that there's some confusion in the record because there is, the immigration judgment board stated that, in denying the motion to reopen, that the LPR status was 1990. When the notice to appear in the prior immigration judge decision shows that it was July 7th, 1988. So I think that there's a confusion of when he became a status. So which is true? I'm not entirely sure, to be honest with you, Your Honor. I'm going to go with what's charged in the statute. Every time you say, to be honest with me, I worry, what did you mean, were you honest when you didn't preface your sentence with that clause? It's probably a nervous tick, Your Honor. I apologize. It's okay. Okay, well, relax. Let's get to the bottom of this. You're doing just fine. We're fine. Let's get to the bottom of this. So does it make a difference which date? I think it does. I think it does when we're looking at settled expectation. It's conceded that when he pleaded under any of the convictions, he didn't have the seven years. But I go back to what my previous statement, when we started out, and the fact that these are continuing applications. The board clearly recognized that there was often delay strategies until aliens got their seven years. I think that going back to when if we take the earlier date of when he became a lawful resident, I think it puts him closer to that seven years and only increases the settled expectation that, hey, I'm close to this time. I know that I can go all the way through the board decision to get to the seven years, even if I don't have it in front of the immigration judge. Do we have anything in the record from which we can know or even infer how likely it is on this sort of record that the Attorney General would have intervened to prevent adjustment of status? We know that the Attorney General had that authority and could have done it. We also know that the Attorney General didn't do it. So at the end of seven years, he does get to adjust status. Do we have any information here in the record that tells us how often the Attorney General intervened to prevent adjustment of status? Are you talking about with the convictions, the three misdemeanor convictions, as stopping him from going from temporary resident to lawful permanent resident or getting the 212C? Getting the 212C. Because getting the seven years. I think the St. Cyr decision points out, in the beginning of the St. Cyr decision, is the most telling reference in the fact that it states that from 1989 to 1995 alone, over 10,000 petitions were granted alone. So I think that that's the case. I'm misphrasing the question. He needs to get his seven years in order to be eligible for consideration for 212C. Correct, Your Honor. The Attorney General, based upon these convictions, could have prevented him from getting the seven years. And he did not. And he did not. What I'm asking is, is there anything in the record that can tell us how likely it was that the Attorney General would have intervened to prevent him from getting his seven years? In other words, I'm trying to get at how subtle was the expectation. Understood, Your Honor. I don't have anything in the record as to stating what the percentages were with the Attorney General. All I can state, Your Honor, is that it didn't happen. And I think that that's extremely important because this Court has addressed this identical situation in Lopez-Torres and its one-month predecessor in Perez-Enriquez. And I apologize for not including this in the briefing. However, these cases came out subsequent to the close of the briefing. I'm going to submit a 28-J letter. But in these cases, basically what it said is the Court held that the Immigration Court and the Board are bound by an alien's LPR status. If such was obtained automatically in transfer from temporary resident to lawful permanent resident without the hearing of termination, which is exactly what happened here, the Court specifically rejected the reasoning implored by the Board and the IJA, and that the present case and held proceedings must be conducted on the premise that the alien is a lawful resident. In other words, that Petitioner's temporary status was unquestionably automatically transferred from temporary to lawful permanent resident without termination hearings by the Attorney General, as Your Honor referenced. Even in the context of three misdemeanors, both the Immigration Judge and the Board should have been bound by the lack of happening of the termination. I note the three convictions change the discretionary status of the Attorney General in this kind of situation. Does it change the discretionary status? I don't believe so. I think that they just review the decision, they review the cases, and the Attorney General makes a decision one way or another what to do it. But the point is, is that if that is going to happen, the Petitioner is entitled to a hearing. It's a very formal process. And that didn't happen here. And what the Board and the Immigration Judge did is they made a de novo review in place of the Attorney General. And I think that's entirely improper in this situation, which goes to argument that both exceeded the scope of the reopened proceedings. All right. You're over a minute. So you used up your minute, but let's see what the Attorney General has to say. And then we'll move on. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, my name is Thankful Banderstar, and I represent the Attorney General in this matter. I was going through my papers while listening to my opponent, and I want to address a couple of things that came up while he was speaking. One of those things is that there seems to be a question as to when Mr. Gallegos-Vazquez became a permanent resident. And it is the Attorney General's position that that happened in December 1990, so after he pled guilty or was convicted of those three misdemeanors. And, of course, the Attorney General disputes whether or not he established that he pled guilty to those three misdemeanors. Right. Isn't the evidence, I mean, as Judge Fletcher pointed out, I mean, you could not have had the pre-trial proceedings and the trial proceedings given this time frame. So he had to have pled guilty. I had not noticed that before, and when you pointed that out, that struck me similarly. I mean, we just can't get it together that quickly to have a trial, right? Beyond all speedy trials. But even if we set aside the issue of whether or not he pled guilty, and we just assume for the record that he did plead guilty to those three misdemeanors, we still have the issue of whether he could have had a settled expectation to availability of 212C. Number one, 212C was only available to lawful permanent residents, which at the time, the government argues, he was not. He was admitted as a temporary resident in July 1988, and was adjusted to LPR status in December 1990. Right. What complicates this for me is that he was part of the SAW program, and the SAW program makes that adjustment to permanent status automatic. And it takes the wheels of justice to turn to intervene to preclude that from happening. And so that tends to make me think that he has a pretty high expectation. I don't know. I haven't yet decided whether it's settled. But a pretty high expectation that it's going to be an automatic adjustment, and that he will have the right to the release. Provided he gets the seven years. I see what you're saying, and it very likely boils down to that statutory provision that allows for termination of temporary status, and a denial of adjustment to lawful permanent status based on three misdemeanor convictions. And, Judge Fletcher, you were asking about if there's anything in the record with regard to the sort of statistics as to, you know, how frequently the Attorney General exercised that discretion in favor of or against the alien. And I would agree with my opponent that there's nothing in this record that establishes that fact one way or another. So we don't have a sense. Is there anything of which we could take judicial notice? Any reports? I don't know of the existence of any. I wouldn't want to speculate as to whether there might be something. I have to say my instinct is that I see a fair number of these cases, but it's an odd sample, of course. It's the cases that get litigated and so on. I've never seen one in which the AG has intervened to prevent this adjustment of status, but I'm not sure he ever would have. Right. I mean, there's so many ways that a case like that may or may not come to the attention of this Court or my office. I mean, it's interesting you ask if there's something the Court can take judicial notice of. I'm sure you have seen some asylum cases where there are asylum statistics that the government presents to the Court just to give the Court a sense and a flavor of how routinely asylum is granted. So something along those lines in this context would, of course, be very helpful. Here's the other part of it. You did have the three misdemeanor convictions, and I know it's hindsight, but the Attorney General did not intervene. So it's hard to sort of set aside that fact in this case, because you'd think if the Attorney General was going to routinely intervene in cases where there were three misdemeanors, the red line would be closed. Right. Well, I mean, I agree with you that, you know, 2020, now that we know what did happen, can we say that that means that the petitioner in this case had a settled expectation that that would happen? And, I mean, you know, the government's position is that because he at the time wasn't an LPR and therefore wasn't even eligible for 212C, couldn't have even thought that he would apply for 212C, coupled with the fact that he may never have been able to adjust because of his three misdemeanor convictions rendered him not to have had a settled expectation for 212C. Now, settled expectation is an interesting word or phrase. It doesn't say vested right. It's settled expectation. And I may expect something that's not certain. I mean, that's why it's called an expectation. So how much uncertainty can we tolerate consistent with the phrase being applied, settled expectation? Yes. I mean, I think that's... So merely to say that it's uncertain doesn't mean that it's not in a settled expectation. I would agree with that. I would agree with that. I mean, the cases that came up that the immigration judge relied on and that petitioner presented to the immigration judge, Velasco Medina, Leon Paz, and Ken Comedge, talk a lot about these issues, about when someone pled guilty, what they thought or what they could have thought might have been available to lead to that. These tend to be could have thoughts. I mean, in a way, it's fantasy. It's what would a well-educated legal observer have thought rather than what did this individual think. Right. Right. I mean, it's unlikely even the plaintiffs in St. Cyr actually thought about the issue. I mean, it's almost a complete legal fiction, but it's what we're applying. Indeed. So, you know, the government argues in this case that petitioner just has not demonstrated that he had the kind of settled expectation that we're talking about here for eligibility for relief under 212C. And so the government would ask the court to deny the petition for review. And if there are no further questions. Thank you. Thank you. Do you want? Can I have 30 seconds? Sure. Your Honor, I refer back to the issue of talking about the discretion and whatnot as to whether this would have been adjusted or not. And I refer back to the Lopez-Torres cases. And this is found at 202 Fed Appendix 979. And it's essentially the identical facts. In 1988, Lopez was granted temporary residence status under the SAW. Lopez pled guilty to two counts of possession of stolen property after his temporary residence status. In 1990, notwithstanding his convictions, Lopez was automatically adjusted to permanent resident pursuant to SAW. The government argues that Lopez was never lawfully accorded the privilege of residing permanently in the United States because his convictions occurred before he became a lawful permanent resident and that he is eligible for relief. This is the identical argument the government is making in this point. This Court clearly held that under such situations, the government must initiate proceedings on the premise that the alien is a lawful permanent resident. It couldn't be clearer in this respect. He only had two convictions, though, right? It's two convictions, but at the same time, there was a laundry list of events under the situation where lawful permanent resident status can be denied going from temporary resident status. And that's one of them that falls under that situation. And this Court in Lopez is relying on a published decision in Perez-Enriquez, which is 463 Federal 3rd, 1007. Are these cases in your brief? Were you saying you were going to do a 28-J letter? I am going to do a 28-J letter. And these cases were decided after the close of the briefing. And they just did come to my attention when I was jeopardizing the nearly 3,000 cases for St. Cyr. So I will be submitting a 28-J letter, yes. All right. Thank you. All right. Gallegos-Vazquez is submitted. And Campos, the holder, has been deferred. Valdeviezo is submitted on the briefs. And we will take up Lindsey.
judges: Cudahy , Wardlaw, W. Fletcher